IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.     No. 23-cr-1476-WJ

JOEY CHAVEZ,

    Defendant.

**MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS
TO THE DRUG QUANTITY IN THE PSR**

**THIS MATTER** comes before the Court upon Defendant Chavez's objections (**Doc. 65 at ¶¶ 1 & 8**) to the drug quantity and related Base Offense Level in the Presentence Investigation Report ("PSR") (**Doc. 60**). For the reasons that follow—as well as those stated on the record at sentencing—the Court **OVERRULES** Defendant's objections to his offense level under USSG § 2D1.1(a)(5) based on the Drug Quantity Table in USSG § 2D1.1(c).

**BACKGROUND**

On March 31, 2023, Defendant Chavez began a term of supervised release for his previous felon in possession case. *See* **Doc. 77**, No. 20-cr-2125. Shortly thereafter, on April 10, 2023, Defendant Chavez absconded from his residential reentry center. *Id.* An arrest warrant was issued. *See* **Doc. 80**, No. 20-cr-2125.

When the Marshal Service arrested Defendant Chavez on August 23, 2023, a subsequent search of his person revealed drugs and a loaded firearm. *See* **Doc. 60 at ¶ 10**. As a result, the United States filed an Indictment (**Doc. 2**) charging Defendant Chavez with drug crimes, gun crimes, and escape. Specifically, the Indictment charged: (1) possession with intent to distribute

1

50 grams and more of methamphetamine, (2) possession with intent to distribute 40 grams and more of fentanyl, (3) using and carrying a firearm during and in relation to a drug trafficking crime as well as possessing a firearm in furtherance of such crime, (4) being a felon in possession of a firearm and ammunition, and (5) escape in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B) and 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i), 751(a).

Ultimately, Defendant Chavez pleaded guilty to two "B-level" drug offenses in an Information. *See* **Docs. 53–55**; *cf.* 21 U.S.C. § 841(b)(1)(B). He also pleaded guilty to the two firearms offenses. *See* 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A)(i).

According to the admission of facts in the plea agreement, Defendant Chavez "knowingly and intentionally possessed methamphetamine and fentanyl" in August 2023. **Doc. 55 at ¶ 11**. The methamphetamine weighed "90.9 actual grams" and the fentanyl weighed "92.59 net grams." *Id.* **at ¶ 12**. Defendant Chavez intended to distribute at least some of these drugs. *Id.* **at ¶ 11**. Additionally, Defendant Chavez admitted to carrying a loaded firearm "to protect [him]self, [his] drug inventory, and [his] drug cash in the event of a drug deal gone bad." *Id.* **at ¶ 13**.

## ARGUMENT

Despite this admission in the plea agreement, Defendant Chavez now argues that "[t]he government must prove what amount [of drugs] he possessed to sell in order to properly calculate his base level." **Doc. 65 at ¶ 1**. In so doing, he cited *United States v. Wilson*, 17 F.4th 994 (10th Cir. 2021) for the proposition that a Defendant's proffer about an intent to personally consume narcotics shifts the burden to the United States to prove the specific quantity of drugs attributable for sentencing. According to Defendant Chavez, the 90.9 grams of Methamphetamine (actual) and 92.59 grams of Fentanyl are improperly attributed to his crime of possession with intent to

distribute because "most" of the drugs he possessed were intended for personal use. *See* **Doc. 65 at ¶ 1**.

As expected, the United States argues "the defendant is mistaken," **Doc. 66 at 1**, because his "total offense level is appropriately driven by the quantity of drugs that he knowingly and intentionally possessed." *Id.*

Probation echoes this sentiment—explaining the 90-ish grams of methamphetamine and 90-ish grams of fentanyl have a combined converted drug weight of 2,049.47 kilograms.[1] *See* **Doc. 71 at 1**. And the Guidelines state that "[a]t least 1,000 KG but less than 3,000 KG of Converted Drug Weight" results in a base offense level of 30. USSG § 2D1.1(c)(5). Probation goes on to explain that even if the drug quantities were "reduced to less than half, [then] the converted drug weight would still . . . result in a base offense level of 30." **Doc. 71 at 1**. It's also worth noting that possession of "at least 50 G but less than 150 G of Methamphetamine (actual)" also results in a base offense level of 30. USSG § 2D1.1(c)(5).

## CASE ANALYSIS

Given defense counsel's reliance on *Wilson*, some case analysis is prudent. What follows is: (1) the pertinent facts, (2) relevant procedural history, and (3) holding from the *Wilson* case.

\* \* \*

In *Wilson*, the Defendant sold methamphetamine to a confidential informant. 17 F.4th at 998. "Based on these controlled buys and additional information from the confidential informant, a federal search warrant was issued for Wilson's residence." *Id.* During the execution of the search,

---

[1] Here, the PSR explains that the 90.0 grams of methamphetamine (actual) has a converted drug weight of 1,818.00 kg. And 92.59 grams of fentanyl has a converted drug weight of 231.47 kg. As a result, Defendant Chavez's total converted drug weight is 2,049.47 kilograms. *See* **Doc. 60 at ¶ 19**.

As required, Probation utilized the Sentencing Commission's "Drug Conversion Calculator" to ascertain this converted drug weight. *See* https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/drug-conversion.

3

law enforcement located "a plastic bag containing methamphetamine residue, eight Oxycodone pills, a marijuana cigarette, an electronic tablet, and two digital scales." *Id.* After the search, Mr. Wilson was interviewed. He "admitted to buying an ounce of methamphetamine on four occasions (in total, 113.4 grams) since his release from prison nine months earlier." *Id.* at 998. Of import, Wilson claimed that "he personally consumed most of that amount and sold the rest to supply his own habit." *Id.*

Ultimately, Mr. Wilson pleaded guilty. And he did so without the benefit of a plea agreement. In preparing the PSR, Probation calculated Mr. Wilson's base offense level by adding up the: (1) 1.54 grams "actually sold by Wilson during the controlled buys," (2) "113 grams he admitted to purchasing," and (3) an additional estimated 27.5 grams sold to another individual. 17 F.4th at 999. Mr. Wilson objected—arguing that the inclusion of the 113 grams was improper. In his mind, he was only pleading guilty to "selling 1.54 grams of methamphetamine to a police confidential informant." 17 F.4th at 998. The United States argued it met its burden of proof by "proving the total amount of meth possessed by Wilson and that he had distributed some portion of it." *Id.* at 1000.

On appeal, the Tenth Circuit framed the issue as: "whether a personal-use drug quantity constitutes 'relevant conduct' under Sentencing Guidelines § 1B1.3(a) for a defendant convicted of simple distribution." 17 F.4th at 1000.

The Tenth Circuit held that Wilson's "personal-use quantity" did "not possess the necessary relationship" to his distribution conviction. *Id.* at 1001. That's because "any personally consumed portion" could not be "part of or connected to" the crime of possession with the intent to distribute. *Id.* at 1002 (citing *United States v. Gill*, 348 F.3d 147, 153 (6th Cir. 2003)). The Court

4

also held that the Defendant "has the burden of coming forward with evidence to establish a personal-use quantity." *Id.* at 998; *see also id.* at 1000 & 1004 (same).

## DISCUSSION

At bottom, *Wilson* stands for the proposition that "personal use quantities of drugs do not qualify as relevant conduct for purposes of the Sentencing Guidelines, unless the drugs are connected to the offense of conviction." *United States v. Risco*, 2022 U.S. App. LEXIS 15206, at *10 n.4 (11th Cir. June 2, 2022) (per curiam and unpublished). But Defendant Chavez is not like Mr. Wilson. And these cases are not on all fours. *Cf. United States v. Martinez*, 649 F. Supp. 3d 1182, 1190–91 (D.N.M. 2023) (Vázquez, J.) (distinguishing *Wilson*'s limited holding).

A few key aspects of the *Wilson* opinion hammer this point home.

**I. Sufficient Connection**

The *Wilson* Court explained that "if there is a sufficient connection between the personal-use quantity and the distribution offense of conviction" then the personal-use quantity can be included as relevant conduct under (a)(1)(A). 17 F.4th at 1002 (citation omitted). The holding is not as broad as Defendant Chavez desires—it does not categorically exclude proffered "personal use" amounts from attribution at sentencing.

Mr. Wilson was caught selling a total of 1.54 grams of narcotics. But the PSR calculated nearly 150 grams of methamphetamine as relevant conduct.

Defendant Chavez, however, was in possession of nearly 200 grams of narcotics at the time of his arrest. No additional quantities of narcotics are being attributed to him by way of his own admission or the admission of others. Rather, the PSR makes clear that additional drugs—*i.e.*, fentanyl reside, Xanax bars, and suboxone strips—are "not . . . included" in the converted drug weight. **Doc. 60 at ¶ 10**.

There is no legitimate argument that the narcotics at issue here are insufficiently connected to Defendant Chavez's offenses of conviction. Unlike Mr. Wilson, Defendant Chavez admitted to possessing the full amount of the drugs at issue. The drug quantities in the PSR actually exist here—rather than simply exist retrospectively by way of admission. This means there is a connection between the alleged "personal use quantities and the offense of his conviction." 17 F.4th at 1004.

## II. Defendant's Burden

Additionally, the *Wilson* case makes clear that a criminal defendant bears "some" burden to establish "personal-use quantities."  17 F.4th at 1004. Claiming personal use is not a "get-out-of-jail-free card." *Id.* at 1005. And argument by defense counsel that "because [Chavez] had never admitted how much he sold versus how much be consumed, the [United States] had failed to meet its burden of proof" is insufficient.

When, as here, the United States established that Defendant Chavez possessed 90 grams of methamphetamine and 90 grams of fentanyl with the intent to distribute, then Defendant Chavez has "the burden of coming forward with evidence that some of that amount should be excluded as a personal-use quantity." *Id.* at 1006. Defendant Chavez presented no such evidence.

## III. Additional Reasons

Unlike Mr. Wilson, Defendant Chavez made factual admissions in a written plea agreement to possessing specific quantities of narcotics with an intent to distribute them. Here, the plea agreement makes clear that Defendant Chavez: (1) knowingly and intentionally possessed 90.9 grams of methamphetamine and 92.59 net grams of fentanyl, and (2) intended to distribute these narcotics. Most importantly, the drugs at issue were found on Defendant Chavez's person when he was arrested. These facts further distinguish this case from *Wilson*.

It's also worth noting that Defendant Chavez pleaded guilty to B-level distribution—and this means, statutorily, he cannot claim to have possessed fewer than 40 grams of fentanyl or 5 grams of methamphetamine. *See* 21 U.S.C. §§ 841(b)(1)(B)(vi) & (viii). That wasn't the case in *Wilson*—who pleaded to a C-level offense. This means there are statutory-minimum quantities Defendant Chavez possessed with the intent to distribute.

At the end of the day, Defendant Chavez cannot avail himself of the "personal use" carveout in *Wilson*.

## CONCLUSION

Having reviewed the parties' filings, heard the oral arguments of counsel, and considered the applicable law, the Court finds Defendant Chavez's objections to the drug quantity calculation in the PSR lack merit.

**IT IS THEREFORE ORDERED** that Defendant Chavez's objections (**Doc. 65 at ¶¶ 1 & 8**) are **OVERRULED**.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE